IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, a minor through her mother and father, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2016 CV 6646 |
| BOARD OF EDUCATION OF THE COMMUNITY HIGH SCHOOL DISTRICT 218, TY HARTING, individually and his official capacity, JOHN HALLBERG, individually and his official capacity, MIKE JACOBSON, individually and his official capacity, KEN STYLER individually and his official capacity, RAYMOND VAN SYCKLE individually, | ) ) ) ) ) ) ) ) ) ) | Judge: Charles Norgle |
| Defendants. | ) | |

## ***AMENDED COMPLAINT***

Now comes Plaintiff, Jane Doe, a minor through her mother and father, by and through her

attorney Raymond J. Sanguinetti of Rathje & Woodward, LLC, and complains of Defendants,

BOARD OF EDUCATION OF THE COMMUNITY HIGH SCHOOL DISTRICT 218 ("CHSD

218"), *et al.* as follows:

## INTRODUCTION

1.      This lawsuit arises on behalf of a minor child as a result of (a) actions and inactions

of the defendants that allowed and emboldened Raymond Van Syckle to engage in acts of sexual

misconduct and other tortious behavior, (b) from the failure of defendants to protect a minor child,

(c) from the failure to appropriately hire, supervise and train administrative staff, and (d) from the

willful and wanton neglect and reckless indifference of Oak Lawn Community High School

District No. 218, Ty Harting, John Hallberg, Mike Jacobson, Ken Styler and Raymond Van Syckle.

## PARTIES

2.      Plaintiff, JANE DOE, is a minor child and was at all times relevant to this complaint a resident of Cook County, Illinois.

3.      Defendant RAYMOND VAN SYCKLE, at all times relevant, was a resident of Will County, Illinois who was employed as an equipment manager at the Harold L. Richards High School in Oak Lawn.

4.      Defendant BOARD OF EDUCATION OF THE COMMUNITY HIGH SCHOOL DISTRICT 218 ("CHSD 218"), is a body corporate and politic with its center of governmental operations in Cook County and which operates Harold L. Richards High School in Oak Lawn, Illinois ("Richards High").

5.      CHSD 218 benefits substantially from the receipt of federal financial assistance and continues a program or activity that has long qualified for such federal financial assistance.

6.      CHSD 218 is in charge of providing a public education to students, including numerous minors such as Jane Doe, through (a) oversight and supervision of all school functions, school property and school treatment programs, and (b) the hiring, supervision, management, assignment, control and regulation of individuals who serve as staff members, including but not limited to school teachers, coaches, physical education instructors, and equipment managers as well as the review and supervision of curricula developed by the district, schools and teachers.

7.      CHSD 218 is also in charge of and responsible for the enforcement of all policies, procedures and guidelines within the District. This charge and responsibility included supervision and discipline of staff and administrators including but not limited to Van Syckle, Harting, Hallberg, Jacobson, and Styler.

2

8.     Ty Harting is the Superintendent of CHSD 218, and was at all time relevant to this complaint responsible for ensuring that High Schools like Richards High and its principals and staff complied with CHSD policies and procedures for ensuring the safety their students.

9.     John Hallberg is the Principal of Richards High, and is responsible for the day-to- day operations of Richards High, including but not limited to supervision of staff and school administrators charged with the safety of students.

10.     Mike Jacobson is the Associate Principal of Richards High, and along with Defendant Hallberg is responsible for the day-to-day operations of Richards High, including but not limited to supervision of staff and school administrators charged with the safety of students.

11.     Ken Styler is the Assistant Principal of Athletics, and is the immediate supervisor of Raymond Van Syckle, and knowingly allowed Van Syckle to have access to female students in a one on one capacity with direct and unsupervised access to the girls' locker rooms, changing and showering areas.

<u>JURISDICTION AND VENUE</u>

12.     Jurisdiction lies under 28 USC § 1331 inasmuch as the complaint presents claims that arose under federal statutes and thus present a federal question.

13.     Jurisdiction over state claims arises under 28 USC § 1367(a).

14.     Venue in the Northern District of Illinois, Eastern Division is property under 28 USC § 1391 because the occurrences complained of took place in Cook County.

<u>FACTS COMMON TO ALL COUNTS</u>

15.     Plaintiff is a student athlete at Richards High, and was involved in numerous curricular and extra-curricular activities at Richards High. She was heavily involved in the

swim program at Richards High, and like other female students that participate in swimming activities she was placed in direct contact with Raymond Van Syckle.

16.     Van Syckle was a mandatory reporter under the Illinois Abused and Neglected Child Reporting Act.

17.     CHSD hired Van Syckle to work around young females without preforming a criminal background check.

18.     Despite being hired as an equipment manager, Van Syckle was given teaching assignments in physical education classes and was unsupervised in his interactions with young female students.

19.     Upon information and belief, Van Syckle is not a licensed teacher or a certified instructor by the State of Illinois.

20.     On information and belief, prior to October 30, 2015, Van Syckle was reported to CHSD 218 administrators at Richards High for engaging in inappropriate conduct with female students of a sexual nature.

21.     Despite these reports, CHSD 218 took no action against Van Syckle. In fact, after these reports, CHSD 218 placed Van Syckle in other positions in the athletics program that gave him unsupervised access to female students.

22.     Van Syckle was allowed to have one-on-one unsupervised access with female students before and after Richards High's regular hours.

23.     Van Syckle was placed in a position of control and authority over female students of Richards High.

4

24.     Van Syckle was given unfettered access to all areas of the locker rooms, showering areas and changing areas which young female students used to participate in physical education and athletic programs.

25.     The design of the changing/shower area was such that the girls' shower and changing areas could be easily viewed through an observation window.

26.     This observation window gave faculty and staff with access to the girls' showering/changing areas the ability to view female students showering and changing their clothes at various stages.

27.     Van Syckle had unfettered access to the observation window which served as a platform for him to view female students at various stages of undress, including but not limited to fully naked female students that would rinse off or shower after using the swimming pool.

28.     CHSD 218 was aware that the observation window presented a problem to the safety, privacy and physical wellbeing of female students.

29.     Sometime prior to October 30, 2015, CHSD had placed a shower rod and plastic curtain to obstruct viewing of the girls' locker room. The shower rod and curtain allowed for anyone with access to the viewing side of the window to easily manipulate the rod and curtain to have an unobstructed view of areas of the girls' locker room that young female students undressed and showered.

30.     On October 30, 2015, during the school day, Van Syckle had one-on-one contact with Plaintiff outside of the pool area prior to swim class. Van Syckle told Plaintiff that he might need her to run an errand for him, and that he would let her know prior to the end of class. Around 10 minutes before class ended, Van Syckle called Plaintiff out of the pool to run the errand.

31.     As Plaintiff left the pool area to enter the locker room to shower and dress, Van Syckle told Plaintiff not to use the bathroom or shower stalls in the locker room because they were just treated with a chemical that would burn Plaintiff's feet. This left the area directly across from the observation window as the only area that Plaintiff could undress.

32.     While getting undressed, Plaintiff looked up at the observation window and noticed that the shower rod was bent down with a recording device pointed at her.

33.     Terrified by this horrific act, Plaintiff fled the locker area and hid from view close to the exit door which leads back to the pool area. Peeking out from her hiding place, Plaintiff saw Van Syckle exit the entry way that leads to the observation window. Still in terror, she remained hidden.

34.     Plaintiff was able to avoid Van Syckle, and was only able to exit the locker room safely when a fellow student came to her rescue.

35.     While Plaintiff was exiting, Van Syckle started screaming for Plaintiff telling her that everything was alright and asking for Plaintiff's location. When Van Syckle saw Plaintiff with her classmate, Van Syckle began calling Plaintiff's name and asking if she was still going to run the errand for him.

36.     Plaintiff immediately reported the incident to Richards High administrators.

37.     Upon information and belief, later in the school day Van Syckle was questioned by Hallberg and Jacobson. Van Syckle turned over his personal phone to school officials, and was told to leave Richards High for the rest of the day.

38.     Van Syckle's phone was an iPhone with video recording capabilities.

39.     Before leaving Richards High, Van Syckle requested that his phone be returned, but his request was denied.

40.    Upon information and belief, prior to being questioned CHSD 218 administrators, Van Syckle took the opportunity to attempt to erase any photos and video recordings of Plaintiff.

41.    CHSD 218 administrators and personnel with knowledge of the allegations of Plaintiff that Van Syckle had engaged in the unauthorized recording of a minor in a sexual and abusive manner, failed to immediately report the allegations to the proper authorities including the Illinois Department of Children & Family Services.

42.    Van Syckle was subsequently arrested and charged with a Class X felony for the unauthorized video recording of a minor. There is a criminal proceeding pending in the Circuit Court of Cook County, Criminal Division.

43.    Plaintiff has been physically and emotionally traumatized and permanently affected by the sexual abuse which Van Syckle subjected her to as a minor child. Plaintiff respected Van Syckle as a teacher and authority figure. By abusing her in a sexual manner, Van Syckle abused her trust in a most serious manner, causing substantial emotional distress.

44.    Plaintiff and her parents have been deeply injured as well. They have to live with the knowledge that their young daughter was subjected to sexual abuse as a direct result of CHSD 218's refusal to take steps to prevent it. In addition to the turmoil that has been placed upon the family, the parents have sustained economic injuries due to the expenses of medical and psychological care arising from the conduct of Defendants.

### Count I 42 USC § 1983 (All Defendants)

45.    Plaintiff realleges and incorporates paragraphs 1 through 44 of this Complaint as if restated herein.

46.     Under the Fourteenth Amendment, Plaintiff had a right as a public school student to personal security and bodily integrity and Equal Protection of Laws. The Defendants were all state actors acting under the color of law.

47.     As described more fully above and below, Plaintiff was subjected to sexual harassment and abuse by Defendant Van Syckle. The harassment and abuse suffered by Plaintiff was based on her gender. Further, Van Syckle, CHSD 218, Harting, Hallberg, Jacobson and Styler sexually harassed, abused and otherwise discriminated against Plaintiff because of her gender.

48.     CHSD 218, Harting, Hallberg, Jacobson and Styler had direct knowledge and/or actual notice of Van Syckle's previous record of sexual activities directed toward female students, but was deliberately indifferent to Van Syckle's misconduct. These activities included Van Syckle's grooming of at least two other female students for possible sexual exploitation similar to what was perpetrated on Plaintiff. These students complained to CHSD 218 administrators, which upon information and belief included Hallberg, Jacobson, Styler and others, and Van Syckle was warned to avoid further contact. CHSD 218 did not take any investigative or disciplinary measures against Van Syckle, and Van Syckle was allowed to continue to teach young girls despite that he lacked any teaching credentials, certifications or background checks.

49.     Harting, Hallberg, Jacobson and Styler each knew of the actions of Van Syckle and had the authority to stop Van Syckle's predatory behavior, but chose to condone such behavior through inaction.

50.     CHSD 218, Harting, Hallberg, Jacobson and Styler had direct knowledge that there was an observation window in the girl's locker room that allowed equipment managers like Van Syckle to have visual access to changing/shower areas of the girls' locker room. Upon

information and belief, CHSD 218, Harting, Hallberg, Jacobson and Styler received complaints about this observation window being used to allow such visual access to young girls changing and showering. CHSD 218's response, as well as Harting, Hallberg, Jacobson and Styler, to these complaints was to erect a temporary barrier in the form of a plastic shower curtain, which could easily be manipulated to allow for visual access and recordings like the one taken by Van Syckle.

51.     Harting, Hallberg, Jacobson and Styler, who are officials and administrators of CHSD 218, had knowledge of Van Syckle's misconduct and had authority to institute corrective measures, but failed to do so. Instead, CHSD 218 through Harting, Hallberg, Jacobson and Styler, allowed Van Syckle to continue in the same role in the athletic program at Richards High School, which served to condone Van Syckle's previous sexual exploitation and attempted sexual exploitation of young girls. Empowered by CHSD 218's failure to take action on the sexual harassment complaints against Van Syckle or correct the known danger of the observation window, Van Syckle was allowed by CHSD 218, Harting, Hallberg, Jacobson and Styler to victimize Plaintiff in a sexually harassing manner.

52.     Plaintiff has been victimized based on her membership in a certain class of individuals. Plaintiff was treated differently than other similarly-situated individuals.

53.     The differential treatment of Plaintiff, described in the preceding paragraphs was intentional, willful and wanton, motivated by nefarious and discriminatory purpose, and was not rationally-related to any governmental interest.

54.     The misconduct described in this Count was undertaken by the policymakers who possessed final authority to establish municipal policy with respect to the actions ordered.

55. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

56. As a result of the above described wrongful conduct, Plaintiff has suffered damages, including but not limited to, mental stress and anguish.

## Count II 20 USC § 1681(a) Gender Discrimination (CHSD 218)

57. Plaintiff realleges and incorporates paragraphs 1 through 44 of this Complaint as if restated herein.

58. Plaintiff is a member of a group protected by Title IX of the United States Code.

59. As described more fully above and below, Plaintiff was subjected to sexual harassment and abuse by Defendant Van Syckle. The harassment and abuse suffered by Plaintiff was based on her gender. CHSD 218 allowed Van Syckle to get away with prior acts of sexual harassment and predatory grooming of female students, and Plaintiff's safety at school was jeopardized because of her gender, and has affected her ability to learn and participate in school activities.

60. The harassment and abuse was so severe and extreme that it has altered the conditions of Plaintiff's education and ability to participate in school activities. Plaintiff has withdrawn from activities (both curricular and extra-curricular) at the school because she no longer feels safe, and her academic achievement has been effected. Plaintiff has sought the help of mental health professionals to deal with the impact of the actions of CHSD and its effects on Plaintiff's educational opportunities.

61. CHSD 218 had direct knowledge and/or actual notice of Van Syckle's previous record of sexual activities directed toward female students, but was deliberately indifferent to Van Syckle's misconduct. These activities included Van Syckle's grooming of at least two other female students for possible sexual exploitation similar to what was perpetrated on

Plaintiff. These students complained to CHSD 218 administrators, which upon information and belief included Hallberg, Styler and others, and Van Syckle was warned to avoid further contact. CHSD 218 did not take any investigative or disciplinary measures against Van Syckle, and Van Syckle was allowed to continue to teach young girls despite that he lacked any teaching credentials, certifications or background checks.

62.     CHSD 218 had direct knowledge that there was an observation window in the girl's locker room that allowed equipment managers like Van Syckle to have visual access to changing/shower areas of the girls' locker room. Upon information and belief, CHSD 218 received complaints about this observation window being used to allow such visual access to young girls changing and showering. CHSD 218's response to these complaints was to erect a temporary barrier in the form of a plastic shower curtain, which could easily be manipulated to allow for visual access and recordings like the one taken by Van Syckle.

63.     The officials and administrators of CHSD 218 who had knowledge of Van Syckle's misconduct had authority to institute corrective measures, but failed to do so. Instead, CHSD 218 allowed Van Syckle to continue in the same role in the athletic program at Richards High School, which served to condone Van Syckle's previous sexual exploitation and attempted sexual exploitation of young girls. Empowered by CHSD 218's failure to take action on the sexual harassment complaints against Van Syckle or correct the known danger to female students that the observation window posed, Van Syckle was allowed by CHSD 218 to victimize Plaintiff in a sexually harassing manner.

64.     As a direct and proximate result of the aforementioned conduct of CHSD 218, with respect to and resulting in the aforementioned and described injuries to Plaintiff, Plaintiff sustained personal injuries of a pecuniary nature.

11

**COUNT III Assault & Battery (Van Syckle)**

65.    Plaintiff realleges and incorporates paragraphs 1 through 44 of this Complaint as if restated herein.

66.    As described in the preceding paragraphs, the conduct of Van Syckle, acting under the color of law and within the scope of his employment, constituted unjustified and offensive contact of a sexual nature, undertaken willfully and wantonly, proximately causing Plaintiff's injuries.

67.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

68.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

69.    As a result of the sexual nature of the misconduct, Plaintiff sustained injuries, including but not limited to a reasonable apprehension of bodily harm.

**COUNT IV Willful and Wanton Retention/Failure to Supervise**
**(CHSD 218, Harting, Hallberg, Jacobson and Styler)**

70.    Plaintiff realleges and incorporates paragraphs 1 through 44 of this Complaint as if restated herein.

71.    As described more fully above and below, Plaintiff was subjected to sexual harassment and abuse by Defendant Van Syckle. The harassment and abuse suffered by Plaintiff was based on her gender. Further, Van Syckle, CHSD 218, Harting, Hallberg, Jacobson and Styler sexually harassed, abused and otherwise discriminated against Plaintiff because of her gender.

72.    CHSD-218, Harting, Hallberg, Jacobson and Styler had direct knowledge and/or actual notice of Van Syckle's previous record of sexual activities directed toward female

12

students, but was deliberately indifferent to Van Syckle's misconduct. These activities included Van Syckle's grooming of at least two other female students for possible sexual exploitation similar to what was perpetrated on Plaintiff. These students complained to CHSD 218 administrators, which upon information and belief included Hallberg, Jacobson, Styler and others, and Van Syckle was warned to avoid further contact. CHSD 218 did not take any investigative or disciplinary measures against Van Syckle, and Van Syckle was allowed to continue to teach young girls despite that he lacked any teaching credentials, certifications or background checks.

73.     Harting, Hallberg, Jacobson and Styler each knew of the actions of Van Syckle and had the authority to stop Van Syckle's predatory behavior, but chose to condone such behavior through inaction.

74.     CHSD 218, Harting, Hallberg, Jacobson and Styler had direct knowledge that there was an observation window in the girl's locker room that allowed equipment managers like Van Syckle to have visual access to changing/shower areas of the girls' locker room. Upon information and belief, CHSD 218, Harting, Hallberg, Jacobson and Styler received complaints about this observation window being used to allow such visual access to young girls changing and showering. CHSD 218's response, as well as Harting, Hallberg, Jacobson and Styler, to these complaints was to erect a temporary barrier in the form of a plastic shower curtain, which could easily be manipulated to allow for visual access and recordings like the one taken by Van Syckle.

75.     Harting, Hallberg, Jacobson and Styler, who are officials and administrators of CHSD 218, had knowledge of Van Syckle's misconduct and had authority to institute corrective measures, but failed to do so. Instead, CHSD 218 through Harting, Hallberg, Jacobson and Styler, allowed Van Syckle to continue in the same role in the athletic program at Richards

High School, which served to condone Van Syckle's previous sexual exploitation and attempted sexual exploitation of young girls. Empowered by CHSD 218's failure to take action on the sexual harassment complaints against Van Syckle or correct the known danger of the observation window, Van Syckle was allowed by CHSD 218, Harting, Hallberg, Jacobson and Styler to victimize Plaintiff in a sexually harassing manner.

76.     At all relevant times, Defendants knew or should have known that Van Syckle was creating physical and psychological danger for Plaintiff and other female students.

77.     Notwithstanding the knowledge referenced in the preceding paragraph, Defendants refused to take any steps to prevent Van Syckle from sexually abusing female students.

78.     As a direct and proximate result of Defendants' wanton and willful failure to supervise and retain Van Syckle, Plaintiff was damaged in that she has suffered extreme emotional and physical abuse, emotional distress, loss of normal life and past and future pain.

79.     At all relevant times, Defendants had a duty to properly supervise Van Syckle to ensure the personal safety of CHSD 218 students, including Plaintiff.

80.     Defendants breached this duty in that they did not use reasonable care and caution in hiring and retaining Van Syckle, and their failure to do so was willful and wanton.

81.     Defendants exercised control over Van Syckle.

82.     Defendants had a special duty to Plaintiff for her care and custody.

83.     Defendants were uniquely aware of the dangers that Van Syckle posed to Plaintiff and other female students.

84.     Defendants failed to take any action to protect Plaintiff and other female students from Van Syckle and failed to act to remedy any abuse or harassment of Plaintiff and other female students.

85.     Defendants affirmatively or willfully failed to act to protect Plaintiff.

86.     The injuries to Plaintiff happened while she was under the direct and immediate control of CHSD 218 and its agents.

87.     Each individual Defendant willfully and wantonly failed to immediately report allegations of child abuse by Van Syckle to the State of Illinois Department of Children and Family Services pursuant to the Abused and Neglected Child Reporting Act (325 ILCS 5/1), even though each individual Defendant had reason to suspect and had reasonable cause to believe that female students, including Plaintiff, were abused by Van Syckle.

88.     As a direct and proximate result of the aforementioned willful and wanton conduct of all individual Defendants, they breached their duty to properly supervise employees in such a way as to guarantee Plaintiff's safety and Plaintiff sustained injuries of a personal and pecuniary nature.

### Count V Intentional Infliction of Emotional Distress
### (All Individual Defendants)

89.     Plaintiff realleges and incorporates paragraphs 1 through 44 of this Complaint as if restated herein.

90.     As described more fully above and below, Plaintiff was subjected to sexual harassment and abuse by Defendant Van Syckle. The harassment and abuse suffered by Plaintiff was based on her gender. Further, Van Syckle, CHSD 218, Harting, Hallberg, Jacobson and Styler sexually harassed, abused and otherwise discriminated against Plaintiff because of her gender.

91.     CHSD 218, Harting, Hallberg, Jacobson and Styler had direct knowledge and/or actual notice of Van Syckle's previous record of sexual activities directed toward female students, but was deliberately indifferent to Van Syckle's misconduct. These activities included

Van Syckle's grooming of at least two other female students for possible sexual exploitation similar to what was perpetrated on Plaintiff. These students complained to CHSD 218 administrators, which upon information and belief included Hallberg, Jacobson, Styler and others, and Van Syckle was warned to avoid further contact. CHSD 218 did not take any investigative or disciplinary measures against Van Syckle, and Van Syckle was allowed to continue to teach young girls despite that he lacked any teaching credentials, certifications or background checks.

92.    Harting, Hallberg, Jacobson and Styler each knew of the actions of Van Syckle and had the authority to stop Van Syckle's predatory behavior, but chose to condone such behavior through inaction.

93.    CHSD 218, Harting, Hallberg, Jacobson and Styler had direct knowledge that there was an observation window in the girl's locker room that allowed equipment managers like Van Syckle to have visual access to changing/shower areas of the girls' locker room. Upon information and belief, CHSD 218, Harting, Hallberg, Jacobson and Styler received complaints about this observation window being used to allow such visual access to young girls changing and showering. CHSD 218's response, as well as Harting, Hallberg, Jacobson and Styler, to these complaints was to erect a temporary barrier in the form of a plastic shower curtain, which could easily be manipulated to allow for visual access and recordings like the one taken by Van Syckle.

94.    Harting, Hallberg, Jacobson and Styler, who are officials and administrators of CHSD 218, had knowledge of Van Syckle's misconduct and had authority to institute corrective measures, but failed to do so. Instead, CHSD 218 through Harting, Hallberg, Jacobson and Styler, allowed Van Syckle to continue in the same role in the athletic program at Richards High School, which served to condone Van Syckle's previous sexual exploitation and

16

attempted sexual exploitation of young girls. Empowered by CHSD 218's failure to take action on the sexual harassment complaints against Van Syckle or correct the known danger of the observation window, Van Syckle was allowed by CHSD 218, Harting, Hallberg, Jacobson and Styler to victimize Plaintiff in a sexually harassing manner.

95. The act of Van Syckle videotaping Plaintiff and CHSD 218, Harting, Hallberg, Jacobson and Styler allowing Plaintiff to be videotaped for purposes of sexual exploitation of a minor, is extreme and outrageous conduct.

96. Plaintiff has suffered severe emotional distress due to the horrific acts of Van Syckle, CHSD 218, Harting, Hallberg, Jacobson and Styler. She is in constant fear which has not only affected her school life, but her daily routine from showering and getting dressed in the morning to an inability to sleep believing that she is being watched. This has changed her ability to maintain healthy relationships with friends and family. She has trust and safety issues as a result, and has been forced to seek the help of mental health professionals in order to coupe with daily life.

97. The breach of trust that Plaintiff has endured from the actions of Van Syckle, CHSD 218, Harting, Hallberg, Jacobson and Styler, was of such an intensity that its effects can be felt almost a year later.

98. As described more fully above, the individual Defendants engaged in extreme and outrageous conduct with respect to Plaintiff.

99. This misconduct was rooted in an abuse of power and authority.

100. The misconduct was undertaken with the intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

101.    The misconduct described above was undertaken with malice, willfulness, and reckless indifference of the rights of others.

102.    As a result of the misconduct, Plaintiff has suffered severe emotional distress and anguish.

### COUNT VI Premises Liability (CHSD 218)

103.    Plaintiff realleges and incorporates paragraphs 1 through 44 of this Complaint as if restated herein.

104.    CHSD 218, through Harting, Hallberg, Jacobson and Styler had direct knowledge that there was an observation window in the girl's locker room that allowed equipment managers like Van Syckle to have visual access to changing/shower areas of the girls' locker room. Upon information and belief, CHSD 218, Harting, Hallberg, Jacobson and Styler received complaints about this observation window being used to allow such visual access to young girls changing and showering. CHSD 218's response, as well as Harting, Hallberg, Jacobson and Styler, to these complaints was to erect a temporary barrier in the form of a plastic shower curtain, which could easily be manipulated to allow for visual access and recordings like the one taken by Van Syckle.

105.    Harting, Hallberg, Jacobson and Styler, who are officials and administrators of CHSD 218, had knowledge of Van Syckle's prior misconduct of seeking to sexually exploit underage girls and had authority to institute corrective measures, but failed to do so. Instead, CHSD 218 through Harting, Hallberg, Jacobson and Styler, allowed Van Syckle to continue in the same role in the athletic program at Richards High School, which served to condone Van Syckle's previous sexual exploitation and attempted sexual exploitation of young girls. Empowered by CHSD 218's failure to take action on the sexual harassment complaints against Van Syckle or correct the known danger of the observation window, Van Syckle was allowed

by CHSD 218, Harting, Hallberg, Jacobson and Styler to victimize Plaintiff in a sexually harassing manner.

106. CHSD 218 failed to exercise ordinary care to maintain its property at Richards High in a reasonably safe condition by allowing Van Syckle to access private areas of the girls' locker room by way of a secret observation room that was hidden by a plastic curtain.

107. CHSD 218 continued to allow Van Syckle access to the secret observation room even after it had actual or constructive notice that Van Syckle had prior allegations of sexual misconduct and that the secret room allowed male instructors to view private areas of the girls' locker room.

108. CHSD 218 was aware that the secret observation room caused the premises to be maintained in an unreasonable safe condition, within a reasonable time before Plaintiffs injuries occurred.

109. Plaintiff has been injured by the horrific acts of Van Syckle, CHSD 218, Harting, Hallberg, Jacobson and Styler. She is in constant fear which has not only affected her school life, but her daily routine from showering and getting dressed in the morning to an inability to sleep believing that she is being watched. This has changed her ability to maintain healthy relationships with friends and family. She has trust and safety issues as a result, and has been forced to seek the help of mental health professionals in order to coupe with daily life.

110. The condition of the premises facilitated the sexual harassment and abuse of Plaintiff by Van Syckle, and proximately caused Plaintiff's injuries.

**Count VII Indemnification**

111. Plaintiff realleges and incorporates paragraphs 1 through 44 of this Complaint as if restated herein.

19

112.    In Illinois, public bodies are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. (735 ILCS 10/9-102.

113.    The individual Defendants are or were employees of CHSD 218, and acted within the scope of their employment in committing the misconduct described herein.

**COUNT VIII False Imprisonment (Van Syckle)**

114.    Plaintiff realleges and incorporates paragraphs 1 through 44 of this Complaint as if restated herein.

115.    Van Syckle willfully and wantonly caused Plaintiff to be physically restrained in the girls' locker room.

116.    At the time of the aforesaid, Van Syckle acted without the Plaintiff's consent and without provocation or cause, for the purpose of retraining Plaintiff's personal liberties and freedom of movement.

**Count IX Invasion of Privacy (CHSD 218 & Van Syckle)**

117.    Plaintiff realleges and incorporates paragraphs 1 through 44 of this Complaint as if restated herein.

118.    Van Syckle videotaped Plaintiff while she undressed without authorization which intruded on Plaintiff's seclusion and privacy.

119.    The unauthorized videotaping Plaintiff, a young girl, by Van Syckle, while Plaintiff was undressing with exposed private body parts is offensive to any reasonable person.

120.    Plaintiff's act of undressing was a private act which Van Syckle intruded upon.

121.    Plaintiff has suffered extreme mental anguish and suffering as a result of Van Syckle's actions, which has adversely affected her health and well being. She continues to feel

unsafe and afraid that people like Van Syckle, a sexual deviant, may be watching and recording her while sleeping, showering and dressing.

WHEREFOR, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, awarding compensatory damages, punitive damages as allowed by law, attorneys' fees, and any other relief this Court deems just and appropriate.

JURY DEMAND

In accordance with the Seventh Amendment to the Constitution of the United States of America, and Federal Rule 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted, JANE DOE, a minor child,


s/ Raymond J. Sanguinetti


Raymond J. Sanguinetti
Ann Marie Perez
Rathje & Woodward LLC
300 East Roosevelt Road, Suite 300
Wheaton, IL 60187
630-668-8500
rsanguinetti@rathjewoodward.com
amlperez@rathjewoodward.com