IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, a minor, through her mother and father,<br><br>      Plaintiff,<br><br>v.<br><br>BOARD OF EDUCATION OF THE COMMUNITY HIGH SCHOOL DISTRICT 218, et al.,<br><br>      Defendants. | No. 16 CV 6646<br><br>Hon. Charles R. Norgle |

**OPINION AND ORDER**

Minor child Jane Doe, through her parents ("Plaintiff"), sues Defendants Raymond Van Syckle ("Van Syckle"); the Board of Education of the Community High School District 218 ("District 218"); Superintendent Ty Harting ("Harting"); Principal John Hallberg ("Hallberg"); Associate Principal Mike Jacobson ("Jacobson"); and Assistant Principal of Athletics Ken Styler ("Styler") (collectively, "Administrator Defendants") (all defendants together, "Defendants"). In connection with Van Syckle allegedly videotaping Plaintiff as she began to disrobe, Plaintiff brings nine counts against Van Syckle, District 218, the Administrator Defendants, or a combination thereof. Those counts are: a violation of Plaintiff's equal protection rights pursuant to 42 U.S.C. § 1983; gender discrimination under Title IX, 20 U.S.C. § 1681(a); and seven state law claims. The first two counts thus establish federal jurisdiction. For the reasons below, Defendants' motions are granted as to the federal claims, and the Court relinquishes jurisdiction over the state law claims. The state law claims are dismissed without prejudice and may be refiled in the appropriate state court.

## I. BACKGROUND

Plaintiff is a student-athlete at Harold L. Richards High School ("Richards High") in Oak Lawn, Illinois. Among other extracurricular activities, Plaintiff participated in Richards High's swimming program. Richards High originally hired Van Syckle as an equipment manager. He later received additional assignments to teach physical education classes. Van Syckle had direct and unsupervised interaction with Plaintiff and other female students through the swimming program. He also had access to the locker rooms, including the showering and changing areas. The shower and changing areas had a window through which female students could potentially be viewed.

The specific incident in this case took place on October 30, 2015. District 218 had previously installed a rod and curtain over the window in order for students to shower and change in privacy. Van Syckle asked Plaintiff to run an errand for him ten minutes prior to the end of swimming class. As Plaintiff left the pool to shower and dress, Van Syckle instructed Plaintiff not to use certain bathroom or shower stalls because they had been treated with chemicals that could burn Plaintiff's feet. The remaining untreated dressing area was across from the window.

Starting to undress, Plaintiff noticed that the rod was bent and an iPhone had been attached to capture her undressing. Still clothed, Plaintiff fled the area and hid from view. While hiding, she saw Van Syckle leave the window area. Plaintiff then exited the locker room and heard Van Syckle from a distance yell to her that everything was fine. He also wanted to know Plaintiff's location. Plaintiff immediately reported the incident to the Richards High administration. Principal Hallberg and Associate Principal Jacobson interrogated Van Syckle the

same day and confiscated his personal iPhone. They retained the iPhone over Van Syckle's objections. Van Syckle was also told to leave the premises.

The Complaint also states that prior to October 30, 2015, District 218 had received reports that Van Syckle engaged in inappropriate sexual conduct, including the "grooming of at least two other female students for possible sexual exploitation." Compl. ¶ 48. Plaintiff does not state who brought these complaints to District 218 or when the complaints were lodged. The sexual conduct and grooming are not defined. However, the Complaint does state that Van Syckle was expressly warned to stay away from those students. Finally, although the Complaint states that the window provided a view from which Van Syckle could see fully naked students, Plaintiff does not actually allege that she was viewed nude. Rather, she states that "[w]hile getting undressed, [she] looked up at the observation window and noticed the rod was bent down with a recording device pointed at her." Compl. ¶ 32. Still clothed, she saw Van Syckle in the vicinity.

## II. DISCUSSION

### A. Standard of Review

"Although a party need not plead 'detailed factual allegations' to survive a motion to dismiss, mere 'labels and conclusions'or 'a formulaic recitation of the elements of a cause of action will not do.'" Berger v. Nat'l Collegiate Athletic Ass'n, 843 F.3d 285, 290 (7th Cir. 2016) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Instead, [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). Complaints that fail to state a plausible basis for relief must be dismissed. Moore v. Mahone, 652 F.3d 722, 725 (7th Cir. 2011).

## B. Plaintiff's 42 U.S.C. § 1983 Claims

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law." Brown v. Budz, 398 F.3d 904, 908 (7th Cir. 2005) (citations omitted). In this case, Plaintiff invokes her equal protection rights on the basis of gender. To sustain a claim for an equal protection violation, Plaintiff must show that (1) Defendants treated her differently from others who were similarly situated; (2) Defendants intentionally treated her differently because of her membership in the class to which she belonged (female); and (3) that there was not an exceedingly persuasive justification for the intentional discrimination.[1] See Schroeder v. Hamilton Sch. Dist., 282 F.3d 946, 950-51 (7th Cir. 2002) (internal citations omitted). As the Seventh Circuit has explained:

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

Id. at 951 (internal citations omitted). Thus, "[a] person bringing an action under the Equal protection Clause must show intentional discrimination against [her] because of [her] membership in a particular class, not merely that [s]he was treated unfairly." Trautvetter v. Quick, 916 F.2d 1140, 1150 (7th Cir. 1990). Finally, a showing that Defendants were negligent is insufficient to sustain an equal protection claim. Schroeder, 282 F.3d at 951.

---

[1] "Gender is a quasi-suspect class that triggers intermediate scrutiny in the equal protection context; the justification for a gender-based classification thus must be exceedingly persuasive." Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp., 743 F.3d 569, 577 (7th Cir. 2014) (citing United States v. Virginia, 518 U.S. 515, 533 (1996)). There is clearly no dispute that no exceedingly persuasive justification exists with respect to sexual harassment.

4

### i. Plaintiff's § 1983 Claim against Van Syckle

As to Van Syckle, Plaintiff fails to allege facts from which she could plausibly establish that Van Syckle intentionally discriminated against Plaintiff because of her membership in a class.[2] Plaintiff baldly asserts conclusory allegations that recite the elements of an equal protection claim: "[t]he harassment and abuse suffered by Plaintiff was based on her gender," and "[Defendants] sexually harassed, abused and otherwise discriminated against Plaintiff because of her gender." Compl. ¶ 47; see also id. ¶ 52 ("Plaintiff has been victimized based on her membership in a certain class of individuals. Plaintiff was treated differently than other similarly-situated individuals."); id. ¶ 59 ("The harassment and abuse suffered by Plaintiff was based on gender."). These are formulaic recitations of the elements that the Court need not accept as true. Twombly, 550 U.S. at 555 (the Complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). The remaining factual allegations do not elucidate a discriminatory intent with respect to Plaintiff's gender. As a result, these allegations do not suffice to state a claim. The claim therefore must fail.[3]

To elaborate, and drawing all reasonable inferences in favor of Plaintiff from all the facts alleged, the Complaint is void of allegations which could plausibly show that Van Syckle targeted Plaintiff on the basis of her gender. Sexual harassment based solely on personal attraction does not amount to discrimination based on gender. Trautvetter, 916 F.2d at 1152. In

---

[2] Plaintiff has pleaded sufficient allegations to show that Van Syckle was employed by District 218 and was acting within the scope of his employment when the incident at issue took place.
[3] Plaintiff conclusorily refers to Van Syckle "grooming" two other female students. Compl. ¶¶ 48, 59, 61, 72, 91. The Complaint states no facts as to what Van Syckle did to "groom" other females, who they were, or how this assertion supports a plausible claim for gender discrimination.

affirming the district court's grant of summary judgment on a § 1983 equal protection claim as a result of sexual harassment,[4] the Trautvetter court stated:

> Certainly, the underlying fact is that [the plaintiff] is a woman. But, as we have noted, her status as a woman does not itself support an allegation of sexual harassment under the equal protection clause; she must demonstrate in a colorable manner that [the defendant's] advances were because of her status as a woman as opposed to characteristics, albeit some no doubt sexual, which were personal to her...[the defendant's] feelings were [not] based on anything but a personal attraction to [the plaintiff].

Id.

The factual allegations here do not establish a plausibility that Van Syckle targeted Plaintiff because she is a female; to the contrary, the allegations show that Van Syckle wanted to video record Plaintiff personally. Otherwise put, the Complaint fails to plausibly state that Van Syckle sought out Plaintiff for any reason other than personal attraction. Van Syckle requested that Plaintiff—and only Plaintiff—leave swimming class early to run an errand for him. He then directed Plaintiff—and no other female students—to the particular stall in which he had surreptitiously placed his iPhone for recording. As a comparator, it is not the case, for example, that Van Syckle set up a recording device for an extended period of time scanning the locker room in hopes of recording any or all female students. There is no equal protection action against Van Syckle because it is not plausible that Van Syckle had the requisite discriminatory intent or effect.

Plaintiff's legal authority in her response does nothing to alter the legal analysis. She cites only a single case, Bohen v. City of E. Chicago, Ind., 799 F.2d 1180 (7th Cir. 1986), in

---

[4] The plaintiff failed to state a specific constitutional right as required by § 1983. Id. at 1148. However, "because [the plaintiff did] allege 'sexual harassment' throughout her complaint and because sexual harassment may, in certain circumstances, constitute gender discrimination in violation of the equal protection clause of the fourteenth amendment, [the Seventh Circuit] assume[d] that [the plaintiff] *specifically* pleaded such a claim and address[ed] the propriety of the district court's dismissal of the same." Id. at 1148–49 (emphasis in original).

support of her claim against Van Syckle. Plaintiff looks to Bohen for the propositions that "[a]s a general matter, a single discriminatory act against one individual can amount to intentional discrimination for equal protection purposes," and that she "need not prove a discriminatory policy against an entire class…." Pl.'s Resp. to Van Syckle at 5. To begin, Plaintiff uses these citations absent any application to her own case. Such perfunctory arguments cannot aid in sustaining a claim. See Mahaffey v. Ramos, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

That notwithstanding, Bohen is distinguishable. In that case, supervisors and coworkers repeatedly sexually harassed a female fire department dispatcher over the course of her more than three-year employment. Bohen, 799 F.2d at 1182. The sexual harassment was verbal and physical. A senior dispatcher, who later became the plaintiff's supervisor, spoke of his preferred sexual positions, the plaintiff's participation, and his expectations for her behavior in relation thereto. Id. He rubbed his pelvis against her rear when she stood up and spread his legs so that he was constantly touching her when she was in a seated position. Id. He also forced her to leave the door open when she used the bathroom. Id. at 1182-83. Others stated their sexual fantasies with the plaintiff and even "informed [her] (in words of another color) that a forcible rape in some nearby flora would improve her position." Id. In dicta, the Bohen court cited Batson v. Kentucky, 476 U.S. 79 (1986), for Plaintiff's cited proposition that "[a]s a general matter, a single act discriminatory act against one individual can amount to intentional discrimination for equal protection purposes." Id. at 1187. However, the factual and legal circumstances of Batson are quite different than this case. There, the Supreme Court addressed racial discrimination in the context of *voir dire*. Batson, 476 U.S. at 86 ("The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury

venire on account of race or on the false assumption that members of his race as a group are not qualified to serve as jurors.") (internal citations omitted).

The Batson racial discrimination in the context of *voir dire* is not transferrable to the facts of this case. In that case, where the defendant was African-American, "all four of the black persons on the venire, and a jury of only white persons was selected." Id. at 83. None of the African-American jurors was struck for cause; rather, the prosecutor exercised only peremptory challenges in order to select an entirely white jury without having to provide any legitimate basis. Id.

Likewise, the sexual harassment in Bohen is inapposite to this case. The Bohen court found that pervasive sexual harassment of the victim throughout the entire department, including those with supervisory authority, for the duration of the victim's tenure at her job showed that the city itself and high city officials could have had a policy or custom of sexual harassment. Bohen, 799 F.2d at 1189. Plaintiff in this case uses Bohen to support her claim against Van Syckle, the individual who perpetrated the alleged sexual harassment. Unlike this case, however, the Bohen Plaintiff did not sue the male employees who actually harassed her. Id. (Posner, J., concurring) (concurring in the decision except with respect to the equal protection claim and stating "I would characterize [the equal protection claim] differently from [the majority]: not as a claim of sexual harassment but as a claim of failure to protect the plaintiff against such harassment. The difference is important because the male employees who actually harassed her are not the people she has sued.").[5] The court stated that "[a] single act of a sufficiently high-

---

[5] The concurrence emphasized the importance of the fact that the plaintiff did not sue the employees who actually harassed her. For example, the concurrence states:
> Now this suit is not against the employees who actually harassed [the plaintiff], but against the city itself and high city officials. Therefore, so far as the harassment itself is concerned, it is as if it had been done by private persons. Thus the issue as I view it is not whether sexual harassment violates the equal protection clause. [The plaintiff] is not complaining about sexual harassment as such; she has not named as defendants the people who harassed her; she is complaining about the

8

ranking policy-maker is sufficient to establish an entity's policy or custom," and ultimately found that "sexual harassment was the general, on-going, and accepted practice at the [] Fire Department, and high-ranking, supervisory, and management officials responsible for working conditions at the department knew of, tolerated, and participated in the harassment." Id. (internal citations omitted). Thus, the case does not support Plaintiff's § 1983 equal protection claim against Van Syckle individually because the court never even applied the claims in Bohen to the individual harassers.

### ii. Plaintiff's Claims against District 218 and the Administrator Defendants

Regarding District 218 and the Administrator Defendants, Plaintiff specifically asserts that they "maintained a policy which facilitated and inflicted the injury upon the Plaintiff." Pl.'s Resp. to District 218 and Administrator Defendants at 5. As a threshold matter, the Complaint must show a constitutional violation in order to maintain a § 1983 claim in the first instance. 42 U.S.C. § 1983 (requiring a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws"); Christensen v. Cty. of Boone, IL, 483 F.3d 454, 459 (7th Cir. 2007) ("In order to state a claim under § 1983, the plaintiffs must allege that a government official, acting under color of state law, deprived them of a right secured by the Constitution or laws of the United States."). As previously discussed, the Complaint fails to state that the video recording amounted to a violation of Plaintiff's equal protection rights, and therefore, the Complaint fails to state an equal protection claim in the first instance. As such, Plaintiff's § 1983 claims against District 218 and the Administrator Defendants must also fail because District 218 and the

---

defendants' failure to take steps to prevent such harassment. Her legal theory is that by failing to take steps against harassment by her male coworkers the city was guilty of a selective, deliberate withdrawal of police protection from a female employee because of her sex.
Id. at 1190.

Administrator Defendants could not have maintained a policy of, turned a blind eye to, or condoned equal protection violations where none existed in the first instance.

Even assuming *arguendo* that Plaintiff had stated a claim for an equal protection violation to begin with, the claims against District 218 and the Administrator Defendants would still fail. Under Monell v. Dep't of Soc. Servs. of City of N.Y., local governing bodies may be sued where the unconstitutional action is implemented or executed through a custom—official or carried out absent formal approval. 436 U.S. 658, 691 (1978). However, District 218 and the Administrator Defendants cannot be held liable on a *respondeat superior* theory. Id. Plaintiff's argument rests on her allegations that District 218 and the Administrator Defendants condoned or turned a blind eye to previous acts of sexual abuse by: (1) failing to remove the open and obvious temptation for potential sexual predators to view female students through the locker room window and (2) knowing, but failing to sufficiently respond to, prior reports of female students regarding sexual misconduct by Van Syckle. Plaintiff only vaguely distinguishes her argument against District 218 from her argument against the Administrator Defendants; she largely lumps the two together.

Plaintiff's argument ignores several facts stated within the four corners of her Complaint that show that District 218 and the Administrator Defendants indeed responded—even if in an unsuccessful or unsatisfactory fashion—to the window issue, the prior complaints from female students, and the video recording of Plaintiff. First, the Complaint states that District 218 "placed a shower rod and plastic curtain to obstruct viewing of the girls' locker room...." Compl. ¶ 29; see also id. ¶ 50 ("[District 218], Harting, Hallberg, Jacobson and Styler received complaints about this observation window...[their response] was to erect a temporary barrier in the form of a plastic shower curtain..."); id. ¶¶ 62, 74, 93, 104 (same). As Defendants point out,

Van Syckle had to manipulate the shower rod and beguile Plaintiff into using the particular stall in which he placed his iPhone in order to record Plaintiff. Absent these actions, the curtain remedy had previously been successful. Second, upon receiving complaints of Van Syckle's prior potential misconduct, in particular, the vague allegation that he "groom[ed] at least two other female students for possible sexual exploitation similar to what was perpetrated upon Plaintiff," District 218 and the Administrator Defendants "warned [Van Syckle] to avoid further contact" with those students. Compl. ¶ 48. Third, District 218 and the Administrator Defendants responded to the Van Syckle's deviant actions on the same day that Plaintiff reported the incident. Specifically, Plaintiff states that "Van Syckle was questioned by Hallberg and Jacobson. Van Syckle turned over his personal iPhone to school officials, and was told to leave Richards High for the rest of the day." Compl. ¶ 37. Van Syckle's request that his iPhone be returned was also denied. Thus, District 218 and the Administrator Defendants took remedial action in response to each issue raised in the Complaint. As such, the Complaint on its face fails to establish that there was plausibly a policy or practice that facilitated the alleged sexual abuse.

Plaintiff cites to W. By & Through Norris v. Waymire, 114 F.3d 646 (7th Cir. 1997) in support of her argument that "[r]efusing to remove [the window] was a policy decision made by [District 218]." Pl.'s Resp. to District 218 and Administrator Defendants at 7. The Court agrees with District 218 that Plaintiff's cited authority actually supports dismissal of the claim. In that case, the Seventh Circuit made clear that negligence is insufficient to find § 1983 liability against the municipality. Waymire, 114 F.3d at 651-652 (discussing that recklessness may be sufficient, but gross or heightened negligence is not; stating that "the defendant must make a deliberate choice [including the deliberate choice to avoid an obvious danger]; an inadvertent omission won't do"). Although "[s]lackness, laxness…confusion, and dumbness [may have] been there in

11

profusion," it cannot be said that the actions of District 218 and the Administrator Defendants rose beyond heightened negligence. See id. at 652 (finding that knowledge of a comment calling thirteen-year old girl sexy does not give rise to overlooking an *obvious* danger to that girl) (emphasis in original). As stated *supra*, District 218 obstructed the window with a shower curtain, admonished Van Syckle to stay away from the girls that complained about his behavior, and immediately responded to Plaintiff's complaint.

Plaintiff argues that T.E. v. Grindle, 599 F.3d 583 (7th Cir. 2010), which came before the Seventh Circuit at the summary judgment stage, compels the survival of her § 1983 claim against the Administrator Defendants and District.[6] This authority is also unavailing. Plaintiff is correct that the case dictates that turning a blind eye or condoning unconstitutional conduct can give rise to § 1983 liability. Id. at 588. However, District 218 and the Administrator Defendants correctly argue that Grindle is distinguishable. Unlike this case, the plaintiffs in Grindle offered "evidence that would allow a jury to conclude that [the administrator at issue] knew about [the perpetrator's] abuse of the girls and deliberately helped cover it up by misleading the girls' parents, the superintendent, and other administrators. From [that] evidence, a jury could reasonably infer…purpose[ful] [] discriminati[on] against the girls based on their gender." Id. at 589. While one could surmise that District 218 and the Administrator Defendants could have exercised a higher level of vigilance to protect their students, the actions alleged do not amount to knowledge of actual sexual abuse and a subsequent scheme to cover up the sexual misconduct. Thus, Plaintiff's § 1983 claims against District 218 and the Administrator Defendants fail to establish any plausibility of recovery. The Court therefore rejects Plaintiff's Monell claim.

---

[6] Plaintiff primarily directs the argument toward the Administrator Defendants but also references District 218. The Court therefore addresses the argument as to both the Administrator Defendants and District 218.

12

## C. Plaintiff's Title IX Claim against District 218

"Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, prohibits sexual discrimination in educational programs and activities which receive federal funds." Mary M. v. N. Lawrence Cmty. Sch. Corp., 131 F.3d 1220, 1224 (7th Cir. 1997). "The United States Supreme Court provided for a private right of action against an educational institution under Title IX in Cannon v. University of Chicago, 441 U.S. 677, 694–96 (1979), and granted private litigants the right to recover compensatory damages for a Title IX violation in Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 75–77 (1992)." N. Lawrence Cmty. Sch. Corp., 131 F.3d at 1224. "In Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 75 (1992), the Supreme Court stated that Title IX places on [public schools] the duty not to discriminate on the basis of sex, and when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminate[s] on the basis of sex. We [the Seventh Circuit] believe the same rule should apply when a teacher sexually harasses and abuses a student." Smith v. Metro. Sch. Dist. Perry Twp., 128 F.3d 1014, 1021 (7th Cir. 1997) (internal quotation marks omitted) (alterations in original).

A student that suffers sexual harassment by a teacher may recover damages only if the school district is deliberately indifferent to the harassment. Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors, 593 F.3d 507, 512 (7th Cir. 2010) (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998)). "The standard of deliberate indifference sets a high bar for plaintiffs under Title VI and Title IX"; mere negligence is insufficient. Doe v. Galster, 768 F.3d 611, 619 (7th Cir. 2014). A school district's deliberate indifference requires actual knowledge of the sexual harassment and "substantial control over both the harasser and the context in which the known harassment occurs." McLean Cty. Unit Dist. No. 5 Bd. of Directors, 593 F.3d at 512

13

(internal citation and quotation marks omitted). Provided "the school's response is not 'clearly unreasonable,' it cannot have acted with the requisite deliberate indifference to incur Title IX liability." Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163, 315 F.3d 817, 824 (7th Cir. 2003) (internal citation omitted). Finally, as stated by the Seventh Circuit, "[j]ust as the Supreme Court refused to impute an employee's actions to the municipality in Monell based on agency principles, so too do we refuse to impute a teacher's actions to a School District or School Board." Smith, 128 F.3d at 1027-28.

The Court need not address this claim at length. The discussion of § 1983 liability *supra* explains that one might believe that District 218's actions were amiss, but there is nothing in the Complaint that demonstrates District 218 turned a blind eye or failed to respond so as to condone sexual abuse. This was a failed attempt to video record a young female undressing. She saw the iPhone and ran fully clothed to seek assistance. The window obstruction, reprimanding Van Syckle to stay away from the girls that previously complained about his behavior, and timely responding Plaintiff's complaint show that, even taking all of the allegations as true as the Court must, the Complaint fails to plausibly state a clearly unreasonable response that rises to the high bar of deliberate indifference.

### III. CONCLUSION

In sum, while the Court expressly condemns Van Syckle's modern version of peeping Tom behavior,[7] Plaintiff fails to state a plausible claim for relief under § 1983 or Title IX. Accordingly, Counts I and II of Plaintiff's Complaint are dismissed with prejudice. Because of the dismissal of those two counts, no claims remain under "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Absent a federal question, the Court relinquishes

---

[7] "A person who makes it a habit of sneaking up to windows and peeping in, for the purpose generally of seeing women of the household in the nude." BLACK'S LAW DICTIONARY 1019 (5th ed. 1979).

jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). See City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172-74 (1997); see also Groce v. Eli Lilly & Co., 193 F.3d 496, 500-01 (7th Cir. 1999). The state causes of action are dismissed without prejudice and may be filed in the appropriate venue in the State of Illinois.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: June 19, 2017

15